IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WILLIAM BONEY,                          )
                                        )
          Movant/Defendant,             )
                                        )      Civ. Act. No. 17-197-CFC
          v.                            )      Cr. Act. No. 11-55-CFC
                                        )
UNITED STATES OF AMERICA,               )
                                        )
          Respondent/Plaintiff.         )
_____

William Boney. *Pro se* Movant.

Alexander Mackler, Assistant United States Attorney, United States Department of
Justice, Wilmington, Delaware.  Attorney for Respondent.

**MEMORANDUM OPINION**[1]

March 23, 2020
Wilmington, Delaware

_____

[1]This case was originally assigned to the Honorable Gregory M. Sleet, and was re-
assigned to the undersigned judge on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

## I. INTRODUCTION

William Boney ("Movant" or "Boney") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 153; D.I. 171; D.I. 174) The United States filed an Answer in Opposition, to which Boney filed a Reply. (D.I. 184; D.I. 191) For the reasons discussed, the Court will deny Boney's § 2255 Motion without holding an evidentiary hearing.

## II. BACKGROUND

As summarized by the Third Circuit in Boney's direct appeal, the facts leading to Boney's arrest and conviction are set forth below:

> In 2010, Boney brokered a multi-kilogram cocaine transaction. Philip Haines ("Haines"), whom Boney had known for several years and who had previously sold Boney drugs, informed Boney that he was looking for a drug supplier who could sell him large quantities of cocaine. Boney told Haines that he was familiar with drug traffickers who sold large amounts of cocaine and agreed to make an introduction on Haines's behalf. Haines agreed to pay Boney a fee of $10,000 for each such transaction that he brokered.
>
> Unbeknownst to Boney, however, Haines was working as a confidential informant for the Drug Enforcement Administration ("DEA") at the time, and the cocaine deal was a sting operation. In autumn of 2010, Boney informed Haines that he had located a seller from New Jersey who could supply Haines with five to ten kilograms of cocaine. Haines provided the DEA with information about Boney's efforts to plan the transaction and tipped off the DEA as to the date the transaction was to occur.
>
> The deal occurred at Boney's house in Delaware on November 7, 2010. With Haines's cooperation, the DEA recorded several telephone calls between Boney and Haines on this day, during which Boney stated that the sellers were

1

ready to proceed with the transaction. Boney met Haines at the house and introduced Haines to the sellers. The DEA surveilled the house during the transaction. However, when the agents believed they had been spotted by one of the conspirators, the DEA raided the house. The DEA arrested Boney, along with four other individuals, and seized several kilograms of cocaine.

After his arrest, Boney agreed to cooperate with law enforcement and was released to assist in the investigation of other drug traffickers. However, Boney had a contentious relationship with his DEA handling officer and his cooperation with law enforcement ultimately turned sour. As a result, by spring 2011, the government had begun to take steps to prosecute Boney for his role in the November 2010 cocaine transaction.

In May 2011, the DEA received information from another informant, Ishmael Garrett ("Garrett"), that Boney was attempting to recruit a hit man to murder Haines. Garrett had previously been arrested for drug violations and was cooperating with the DEA in the hope that the sentence he would eventually receive would reflect his cooperation. The DEA developed a plan to have Garrett pose as a hit man and meet with Boney.

Boney and Garrett met for the first time on May 22, 2011. During their conversation—which the DEA surreptitiously recorded—Boney indicated that he was furious that Haines had "set [him] up" in the November 2010 cocaine transaction and solicited Garrett to kill Haines in exchange for $8,000. Boney further requested that, if it was not possible to kill Haines, he wanted Garrett to kill Haines's newborn child. ("[I]f he ain't, if he ain't there, I'll be honest with you I want his kid dead."). During this conversation, Garrett stated that he needed to see a picture of Haines to commit the murder. Boney showed him a picture of Haines from Facebook, which revealed Haines's face as well as several identifying tattoos. Boney also provided Garrett with identifying details about Haines, including the fact that he lived in Philadelphia and that he had a warehouse in Smyrna, Delaware.

Boney met with Garrett two more times, on June 15 and July 3, 2011. During their meetings, Boney discussed payment

2

arrangements for the hit on Haines, including providing detailed information about various locations in the Delaware area that Garrett could rob to obtain the money, giving Garrett the names of people who owed money to Boney so that Garrett could collect directly from them, and discussing the possibility of paying Garrett in marijuana.

Boney was arrested on July 19, 2011. On April 12, 2012, a grand jury returned a superseding indictment charging Boney with: *Count I,* conspiracy to distribute 500 or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), & § 846; *Count II,* attempting to kill another person with intent to retaliate against that person for providing to a law enforcement officer information relating to the commission or possible commission of a Federal offense in violation of 18 U.S.C. § 1513(a)(1)(B); *Count III,* obstruction of justice by soliciting a person to kill a witness for the United States in a related pending criminal case in violation of 18 U.S.C. § 1503(a); and *Count IV,* solicitation of a person to attempt to kill another with intent to retaliate for providing information to a law enforcement officer relating to the commission or possible commission of a Federal offense, as prohibited by 18 U.S.C. § 1513(a)(1)(B), in violation of 18 U.S.C. § 373.

A jury convicted Boney on Counts I, II, and IV and acquitted him on Count III. Because Boney had a prior felony drug conviction, Count I carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment, a fine of $8,000,000, and a minimum of eight years of supervised release. Count II carried a maximum sentence of thirty years' imprisonment. Count IV carried a maximum sentence of twenty years imprisonment because the crime that Boney solicited (murder) was punishable by life imprisonment or death.

On June 12, 2013, the District Court sentenced Boney using the 2012 edition of the United States Sentencing Guidelines Manual. Boney was assigned a criminal history category of III based on his prior felony drug conviction and other non-drug offenses.

As to Count I, the District Court calculated Boney's offense level consistent with the probation office's recommendation in the PSR. Applying offense guideline § 2D1.1 (Offenses

Involving Drugs and Narco–Terrorism), the District Court determined that Count I carried a base offense level of 30, which when combined with a 2–level enhancement for obstruction of justice, yielded an adjusted offense level of 32.

However, the District Court rejected the PSR's recommendation as to Counts II and IV. For Count II, the PSR recommended that the District Court apply U.S.S.G. § 2A2.1(a) (Assault with Intent to Commit Murder; Attempted Murder), and for Count IV, the PSR recommended § 2A1.5(a) (Conspiracy or Solicitation to Commit Murder). The District Court disagreed with the recommendations on both of these counts, expressing disapproval that, in its opinion, the probation office had "pigeonholed" Counts II and IV into guidelines that did not apply to this case. Indicating that it "certainly [did not] believe that the attempted murder [guidelines] w[ere] the best fit for the facts as it heard them," the District Court instead chose to sentence Boney under § 2J1.2 (Obstruction of Justice) for both Counts II and IV.

*United States v. Boney*, 769 F.3d 153, 155–57 (3d Cir. 2014) (citations omitted) (alterations in original).

Boney appealed his conviction, and the Government cross-appealed the sentence, arguing that the incorrect offense level for Counts II and Count IV had been used. *See United States v. Boney*, 634 F. App'x 894, 896-97 (3d Cir. 2015). The Third Circuit affirmed Boney's conviction but agreed that the District Court had incorrectly focused on the facts adduced at trial in choosing the applicable offense Guideline for the witness tampering counts, rather than selecting the most appropriate Guideline based on the offense charged in the indictment. *See Boney*, 769 F.3d at 161. The Third Circuit held that United States Sentencing Guidelines ("U.S.S.G.") §§ 2A2.1 and 2A1.5 rather than § 2J1.2 were the correct Guidelines sections, vacated Boney's sentence, and remanded for resentencing. *Id.* at 161-63. On remand, Boney was

4

resentenced to 272 months of imprisonment. *See Boney*, 634 F. App'x at 895. Boney appealed, and the Third Circuit affirmed the judgment and dismissed the appeal of the denial of Boney's downward departure motion for lack of jurisdiction. *Id.* at 901.

## III.   DISCUSSION

By his timely filed Motion, Boney asserts the following four grounds for relief: (1) defense counsel provided ineffective assistance by failing to present him with a plea offer from the Government  (D.I.165 at 6-7); (2) defense counsel provided ineffective assistance by compelling Boney to testify at trial without advising him of his right not to testify; (3) defense counsel provided ineffective assistance by failing to argue for a variance at the resentencing hearing and by failing to object to a guidelines calculation mistake in light of Amendment 782;[2] and (4) after the Supreme Court's ruling in *Mathis v. United States*, 136 S.Ct. 2243 (2016), Boney's Delaware marijuana conviction does not qualify as a "felony drug offense" under 21 U.S.C. § 851, which means that the mandatory minimum enhancement from five to ten years does not apply to him and, alternatively, defense counsel failed to argue that his Delaware marijuana conviction did not qualify as a "felony drug offense" under then-existing Third Circuit precedent.

Boney has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged

---

[2]In 2014, the Sentencing Commission promulgated Amendment 782 to the Guidelines, which retroactively reduced by two levels the base offense levels assigned to many drug quantities in the Drug Guidelines, including the drug quantities associated with Appellants' offenses. *See* U.S.S.G. app. C, amend. 782 (Supp. Nov. 1, 2014); U.S.S.G. app. C, amend. 788 (Supp. Nov. 1, 2014).

standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Boney must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. In evaluating an attorney's conduct, a court must avoid "the distorting effects of hindsight" and must "evaluate the conduct from counsel's perspective at the time." *Id.* at 687. Under the second *Strickland* prong, Boney must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994). Both *Strickland* prongs must be satisfied in order for Boney to successfully show that defense counsel rendered constitutionally ineffective assistance, and the Court can choose which prong to address first. *See Strickland,* 466 U.S. at 668. The *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689. Nevertheless, "[w]here defense counsel fails to object to an ***improper*** enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2003) (emphasis added).

### A. Claim One: Defense Counsel Failed to Communicate Plea Offer to Boney

In Claim One as originally filed, Boney argues that defense counsel provided ineffective assistance by failing to communicate any plea offers to him. (D.I. 165 at 6-8) He explicitly avers that he "is not aware of any plea offers extended by the government or if there even was an offer." (D.I. 165 at 8) He also states that he "advised counsel

6

that he was willing to entertain possible plea offers in avoidance of trial and requested that [defense counsel] engage the Government on his behalf." (D.I. 167 at 16) According to Boney, defense counsel advised him that the "Government was not receptive to any plea deals and trial was imminent." (D.I. 167 at 17) Boney further asserts that it is his

> belief that the Government had, in fact, been willing to entertain a plea offer and that [defense counsel] did not advise Boney of the Government's intent. This is evidenced by certain statements made by [the Government] at Boney's re-sentencing. In [its] argument for a substantial sentence, [the Government] repeatedly states that Boney was deserving of a substantial sentence due to his unwillingness to "accept responsibility for his actions." [The Government's] passionate argument with respect to Boney's unwillingness to accept responsibility demonstrates that there is a likelihood that the Government did present a plea offer which counsel failed to communicate to Boney.

(D.I. 165 at 7; D.I.167 at 17)

In its Response, the Government asserts that Claim One should be denied as meritless, because defense counsel transmitted a plea offer to Boney, but Boney was unwilling to accept the terms. (D.I. 184 at 17-18) The Government bases this argument on the assertions in defense counsel's affidavit and a June 2012 letter defense counsel wrote to Boney. (D.I. 184-1 at 3, 7) Boney filed a Reply which, after noting the Government's statement that a plea offer was transmitted to defense counsel, alters his original argument from asserting that defense counsel failed to communicate any plea offer to an argument asserting that defense counsel rejected a plea offer without his permission and failed to correct the situation. (D.I. 191 at 3, 6)

7

"Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). It is now well-settled that defense counsel's failure to communicate a formal plea offer to the defendant constitutes deficient performance under *Strickland. Id.* at 145. In turn, a defendant establishes prejudice from defense counsel's failure to communicate a formal plea by demonstrating: (1) a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) a reasonable probability that the prosecution would not have withdrawn the offer and the trial court would not have refused to accept the plea agreement; and (3) a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 145–48.

The threshold inquiry in the "failure to communicate a plea" context is whether the Government actually offered a formal plea offer to the defendant. If the Government did not make a formal plea offer, then the issue of defense counsel's ineffectiveness in communicating a plea offer "simply does not arise." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Frye*, 566 U.S. at 146. Although the Supreme Court has recognized the need for "some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh

8

consequences",[3] the Supreme Court has not provided definitive methods for determining what types of prosecutorial communications constitute a formal plea offer. However, the majority of courts addressing the issue have held that mere informal plea discussions are not enough to trigger counsel's duty to inform. *See Shnewer v. United States*, 2016 WL 867461, at *15 (D.N.J. Mar. 7, 2016); *Hull v. United States*, 2015 WL 5009998, at *2 (W.D. Wis. Aug. 18, 2015) ("The [Supreme] Court has never held that defense counsel can be found constitutionally ineffective for failing to tell their clients about informal discussions they have with the government about possible plea offers."); *Mavashev v. United States*, 2015 WL 1508313, at *9 (E.D.N.Y. Mar. 31, 2015) (noting that there is a significant distinction between formal plea offers and informal plea offers); *United States v. McCall*, 2014 WL 2581353, at *3 (N.D. Cal. June 9, 2014) ("In reality, there is either a formal plea offer, or in its absence, mere discussions between counsel. [...] [T]o transmogrify mere conversation into an 'informal plea offer' and then to further say it must be communicated to an accused on pain of Section 2255 relief would be a nifty sleight of hand."); *United States v. Merlino*, 2014 WL 793987, at *4 (D. Mass. Feb. 28, 2014) ("A majority of courts . . . have held that a formal plea must consist of something more than preliminary oral communications.).

To begin, even though the Government asserts that defense counsel produced a letter showing that a plea offer was transmitted to the defense on June 7, 2012 (D.I. 184 at 17), the Court is not convinced that the Government and defense counsel have accurately portrayed what actually transpired. The Government's assertion is premised

---

[3]*Frye*, 566 U.S. at 146.

on defense counsel's affidavit referring to "the Government's plea offer" as well as defense counsel's letter to Boney describing his discussion with the Government. (D.I. 184 at 17-18; D.I. 184-1 at 7) However, defense counsel's letter to Boney does not state that the Government tendered a plea offer. Rather, defense counsel's letter to Boney asserts that "the Government indicated that they would accept a plea to a drug conspiracy and a solicitation charge." (D.I. 184-1 at 7) In the Court's view, the use of the word "indicated" describes preliminary discussions between the Government and defense counsel regarding the parameters of a possible plea offer, rather than an actual formal plea offer. The fact that Boney stated in his initial filings that he "is not aware of any plea offers extended by the government or if there even was an offer" supports this conclusion, as does the absence of details as to what Boney would have to admit if he was to plead guilty. Assuming that the Court's interpretation is correct, the Court concludes that defense counsel was not ineffective by failing to communicate a formal plea offer to Boney because no formal plea offer ever existed in this case.

Nevertheless, the Court cannot ignore the Government's apparent concession that a formal plea offer was extended, nor can it ignore defense counsel's use of the phrase "the Government's plea offer" in his affidavit. Exercising prudence, the Court will alternatively analyze the instant Claim as though the Government tendered a formal plea offer to defense counsel.

In his affidavit responding to Boney's allegations, defense counsel explains:

> Throughout the period leading up to and through trial, the Government insisted that any plea by Boney had to include both a drug conspiracy and a solicitation count. Boney adamantly refused to plead to a solicitation

charge. Enclosed is correspondence sent to Boney reflecting the Government's plea offer as well as Boney's rejection of same. Boney never indicated that he would accept the Government's plea offer.

(D.I. 184-1 at 3 ¶ 6) The relevant portion of defense counsel's correspondence to Boney as referenced above provides:

Also, as discussed in our recent phone conversation, the Government indicated that they would accept a plea to a drug conspiracy **and** a solicitation charge. Based on our prior discussions, I indicated that you would not accept such a plea. If you have second thoughts on the matter, please let me know in writing as soon as possible.

(D.I. 184-1 at 7) (emphasis in original) Defense counsel's letter is dated June 7, 2012.

Boney attempts to demonstrate that defense counsel rejected a formal plea offer without his knowledge or permission by providing the Court with a copy of what he asserts is his reply letter to defense counsel dated June 18, 2012. In that June 18, 2012 letter, Boney asks defense counsel to look into the Government's "initial offer" of "0-60 months"[4] and tells counsel to "try to get just a drug conviction" and "please file a

_____

[4]In his Reply, Boney asserts that "during March 2011 he signed a plea agreement with his then attorney Brian Chapman on Count I, the drug charge, with a guideline range of 0-60 months." (D.I. 191 at 6) Movant states that the "document [*i.e.*, March 2011 plea agreement] is in the trial documents admitted as evidence and mentioned through a Motion filed by [defense counsel] to the district court for a violation of contractual law as the government re[neg]ed on this plea deal." *Id.* The Court has not located a copy of the March 2011 plea agreement in the case filings. However, a Memorandum Order denying several pretrial motions contains the following information: "[T]he exact nature of the events transpiring after the arrest is unclear and disputed. [] According to [Boney], in March 2011, DEA agents concluded that [Boney's] cooperation was 'insufficient' and discovery materials and a proposed plea agreement were sent to [Boney's] attorney. [] The court's inclusion of any historical information is merely for context and does not constitute a finding of fact." (D.I. 56 at 2 n.2) While this information provides context for

11

motion to have the Government stick to their original offer of 0-60." (D.I. 191 at 27-28)

Boney also states, "Let me know what takes place when you come to see me. If not I'll call you soon." (D.I. 191 at 28)

Given Boney's 2017 statement in this proceeding that he "is not aware of any plea offers extended by the government or if there even was an offer," (D.I. 165 at 8), the Court questions the reliability and veracity of the letter included as an exhibit in Boney's Reply. In other words, if Boney actually wrote the letter on June 28, 2012 and still had a copy of the letter that he presented to the Court in May 2018, why would he inform the Court in 2017 that he did not recall the existence of a plea offer?

In any event, exercising prudence, the Court accepts Boney's June 28, 2012 as a true statement, but finds that the letter does not demonstrate that Boney wanted to accept the tendered plea or that defense counsel failed to follow Boney's wishes. Rather, the letter demonstrates Boney's desire to plead guilty only to the drug charge and his unwillingness to plead guilty to any solicitation charge.

To summarize, when viewed in their totality, the letters and defense counsel's affidavit demonstrate the following: (1) defense counsel engaged in plea discussions

---

Boney's reference to a sentence of "0-60 months," whether or not Boney may have believed he might receive a future favorable plea offer for cooperating with law enforcement in investigating other drug traffickers is irrelevant to the instant proceeding, because Boney did not cooperate with law enforcement. By the spring of 2011 the Government had begun to take steps to prosecute Boney for his role in the November 2010 cocaine transaction, and the grand jury for the District of Delaware returned the original one-count indictment charging Boney with conspiracy to distribute cocaine on May 24, 2011. *See* (D.I. 43 at 1 at ¶ 2) On April 12, 2012, the grand jury returned a superseding indictment charging Boney with conspiracy to distribute cocaine, attempting to kill another person with intent to retaliate, obstruction of justice, and solicitation of a person to attempt to kill another person. *See Boney*, 769 F.3d at 156.

which led to the Government informing defense counsel it would only accept a plea to both the drug and solicitation charges; (2) based on defense counsel's prior communications with Boney, defense counsel informed the Government that Boney would willing to plead guilty only to the drug charge; (3) defense counsel informed Boney about the Government's position and his rejection of that position, but told Boney to let him know in writing as soon as possible if Boney had changed his mind and wanted to accept the plea to both charges; and (4) Boney wrote defense counsel, clearly indicating that he still wanted to plead only to the drug charge and wanted a sentence between 0 to 60 months in length. In short, the record does not support Boney's contention that defense counsel rejected that plea offer without Boney's knowledge and permission.

To the extent Boney contends that defense counsel was ineffective by failing to pursue further plea discussions after rejecting the June 2012 offer, his argument is unavailing. Boney's June 2012 letter to defense counsel explicitly relayed Boney's position that he was only willing to plead guilty to the drug charge and that he was only willing to plead guilty if he received an extremely low sentence in the range of 0-60 months. While the precise parameters of what a potential plea would have looked like in this case are pure speculation, the extensive evidence concerning the solicitation charges that the Government presented at trial and its consistent pursuit of the highest sentence possible precludes Boney from demonstrating a reasonable probability that the Government would have ever extended a formal plea offer with the terms Boney wished. Indeed, the facts that the Government recommended a 400-month sentence at

Boney's first sentencing (D.I. 111 at 1), argued for a "very lengthy sentence above the guidelines" of 151 to 188 months at the first sentencing, challenged on appeal Boney's first sentence of 220 months, and argued on resentencing that Boney should be sentenced to a Guideline sentence of 324 months, make it abundantly clear that the Government would not have recommended a sentence acceptable to Boney. (D.I. 136 at 16; D.I. 182 at 6, 12, 29)

Finally, the Court easily dispenses with Boney's assertion that "certain statements made by the [Government] at [Boney's] re-sentencing" demonstrate that defense counsel ineffectively failed to communicate another plea offer to him. Boney supports his contention with the following statement:

> In [its] argument for a substantial sentence, [the Government] repeatedly states that Boney was deserving of a substantial sentence due to his unwillingness to "accept responsibility for his actions." [The Government's] passionate argument with respect to Boney's unwillingness to accept responsibility demonstrate that there is a likelihood that the Government did present a plea offer which counsel failed to communicate to Boney.

(D.I. 165 at 7) The transcript of the resentencing reveals that the Government and the sentencing court were reflecting on Boney's conduct during the trial and subsequent sentencing, and not referencing any non-communicated plea offer. At the conclusion of the resentencing, the sentencing court noted that "this defendant has not been, particularly the first time around, remorseful or accepting of responsibility, or even admitting the conduct leading up to this day, and I have to take that into account in determining whether a variance from the guideline range is appropriate." (D.I 136 at 36) In short, Boney misconstrues the Government's comments at resentencing about

acceptance of responsibility to mean that a non-transmitted plea offer existed. (D.I. 167 at 20)

For all of the aforementioned reasons, the Court will deny Claim One as meritless.

### B. Claim Two: Defense Counsel Forced Boney to Testify and Did Not Advise Boney of his Right to Refrain from Testifying

A defendant has a constitutional right to testify on his behalf at trial and a corollary constitutional right to refuse to testify. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). A claim alleging that defense counsel forced the defendant to testify is analyzed under the two-pronged *Strickland* standard. *See Palmer v. Hendricks,* 592 F.3d 386, 398-99 (3d Cir. 2010); *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998). Defense counsel's strong advice to a defendant to testify does not amount to forcing him to testify. *Cf. Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir. 2002); *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) ("[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.")

In Claim Two, Boney contends that defense counsel led him to believe that he had no option but to testify, and that defense counsel never advised him that the ultimate decision on testifying was his alone. (D.I 167 at 8) The Court is not persuaded. The only support Boney provides for his assertion that defense counsel forced him to testify is Boney's statement that defense counsel "expressed as much to the court prior to Boney taking the stand when counsel advised the court that his client 'had to testify' to explain Agent Hughes and Phil Haines' testimony." (D.I. 167)

15

However, the trial transcript does not contain any such statement. Prior to Boney taking the witness stand, defense counsel simply stated, "What I was anticipating doing, what it looks like now is Boney will testify." (D.I. 104 at 5) In addition, defense counsel's affidavit asserts that Boney "clearly understood that he could not be forced to testify and that the decision to testify was his alone to make." (D.I. 184-1 at 4) After viewing these two items in conjunction with Boney's failure to provide any other evidence to support his allegation of coercion, the Court cannot conclude that defense counsel forced Boney to testify.

The Court's inquiry is not over, however, because it still must consider if: (1) defense counsel advised Boney that he could refrain from testifying; and (2) if defense counsel's advice that Boney should testify amounted to ineffective assistance under *Strickland*. Notably, a defense attorney's failure to inform a defendant that the decision to testify is personal to the defendant satisfies the performance prong of *Strickland*. *See Brown v. Artuz*, 124 F.3d 73, 80 (2nd Cir. 1997).

In this case, Boney has not provided anything to support his conclusory allegation that defense counsel failed to advise him of his right to refrain from testifying. Although defense counsel's affidavit does not explicitly assert that defense counsel informed Boney of his right to refrain from testifying, the affidavit explicitly asserts that Boney "clearly understood" he could not be forced to testify and that the decision to testify was his alone to make. The trial transcript also demonstrates that Boney was generally informed of his right to refrain from testifying. For instance, part of the preliminary instructions given to the jury and in Boney's presence provided: "Since the

defendant has the right to remain silent, the law prohibits [the jury] in arriving at [a]

verdict from considering that the defendant may not have testified." (D.I. 101 at 107)

Perhaps more significantly, defense counsel explained during his opening statement

that Boney did not have to testify, stating:

> The burden of proof in a criminal case rests at that
> table. It stays there the entire case. It never moves
> over to this side of the courtroom. It stays there
> because of the presumption of innocence in our
> system. And in our system, a criminal defendant need
> do nothing in a case. He need not make an opening
> statement, as he is to you through me today. He need
> not answer – testify or answer any questions. He need
> not call a witness. He need do nothing, and he is
> cloaked in a presumption of innocence which the
> government has to prove beyond a reasonable doubt.

(D.I. 102 at 32) For these reasons, the Court cannot conclude that defense counsel failed

to advise Boney that he could refrain from testifying or that defense counsel failed to

advise Boney that the decision was his alone to make.[5]

The next issue is whether defense counsel's advice that Boney should testify

amounted to ineffective assistance. As noted by the Supreme Court, "the most

important witness for the defense in many criminal cases is the defendant himself,"[6]

because the "most persuasive counsel may not be able to speak for a defendant as the

defendant himself might, with halting eloquence, speak for himself." *Green v. United*

*States*, 365 U.S. 301, 304 (1961).

---

[5]Nevertheless, even if the Court presumes that Boney was not adequately advised
about his right to refrain from testifying, the Court concludes that Boney is not entitled to
relief because he cannot satisfy the prejudice prong of the *Strickland* test. *See infra* at
18-19.

[6]*Rock*, 483 U.S. at 52.

In this case, the Government presented overwhelming evidence through witnesses and exhibits that Boney took substantial steps toward the commission of a "revenge" murder of Haines. This evidence consisted of several meetings Boney had with Garrett, who was posing as a hit-man, during which Boney discussed having Garrett kill Haines in exchange for monetary consideration. Particularly damaging was an audio-recorded meeting during which Boney unequivocally requested Garrett to kill Haines or Haines' newborn child. Boney's theory of defense was that he never intended to harm Haines or his child, but rather was trying to ensnare a dangerous hitman for the authorities in an attempt to work off his pending drug conspiracy charges. In order to support this theory, defense counsel concluded that it would benefit Boney by explaining that the conversations and plotting he engaged in with Garrett about murdering Haines were part of his attempt to cooperate with the DEA and further his goal of reducing his ultimate sentence. (D.I. 104 at 689; D.I. 110 at 10 n. 16)

As defense counsel explains in his affidavit, the recorded conversations in which Boney seemed to solicit a hit man to kill Haines and Haines' baby were sufficiently "damaging" that

> it was and remains this counsel's opinion that the defense had to explain that Boney was simply playing a role to catch a dangerous criminal for the authorities, and that the role had to be played well given Boney's belief that he was dealing with a very dangerous individual. While it was counsel's opinion that the only way to establish the defense was for Boney to testify, Boney clearly understood that he could not be forced to testify and that the decision to testify was his alone to make. Absent some evidence to counter the damaging recordings, there was, in counsel's opinion, no chance that Boney would be acquitted of the solicitation charges.

18

(D.I. 184-1 at 3)  After reviewing defense counsel's explanation in context with the overall record, the Court concludes that defense counsel did not act in an objectively unreasonable manner by advising Boney to testify on his own behalf.

The Court further concludes that Boney has failed to establish that he was prejudiced by defense counsel's advice for him to testify. The aforementioned recorded conversations provided overwhelming evidence of Boney's guilt, and Boney's testimony was the only way to establish that he did not have the requisite intent to harm Haines or his child.  Boney has not demonstrated a reasonable probability that but for counsel's advice to testify the jury would have rejected the substantial evidence against him and acquitted him based upon the absence of his testimony.  Accordingly, the Court will deny Claim Two as meritless.

### C. Claim Three:  Defense Counsel Provided Ineffective Assistance at Resentencing

In Claim Three, Boney contends that defense counsel provided ineffective assistance at his resentencing by failing to recognize errors and make certain arguments.  Defense counsel specifically rebuts this argument in his affidavit, explaining:

> Following the initial sentencing after trial, Boney appealed, challenging his convictions and other issues, but he did not challenge the sentence imposed because the District Court had selected what the defense viewed as a more favorable guideline for application to the solicitation charges; a guideline to which the Government had objected.  Indeed, the District Court imposed a two-point vulnerable victim upward adjustment, to which the Defense had objected.  The Court also rejected the Defense request for a minor role adjustment. Unfortunately, the Government cross-appealed the sentence and challenged the District Court's solicitation guideline

selection.  On appeal, the Third Circuit affirmed the conviction and agreed with the Government that the District Court had chosen the wrong guideline for the solicitation charges. Thereafter, Boney was resentenced utilizing the guideline suggested by the Third Circuit, which resulted in a significantly higher adjusted offense level than originally determined. However, the District Court also granted a downward variance, which somewhat anticipated the otherwise applicable sentence.  Thereafter, Boney appealed this new sentence, but this sentence was affirmed.  Boney's subsequent petition for a writ of certiorari was denied.

(D.I. 184-1 at 5)

Before reaching the substance of Claim Three, the Court finds that it would be helpful to summarize briefly what happened during the two sentencing hearings in this case.

Boney's first sentencing hearing occurred on June 12, 2013.  Prior to sentencing, defense counsel filed objections to the Presentence Investigation Report's ("PSR") guideline recommendations, and also objected to the criminal history score.  During the sentencing hearing, with respect to the cocaine conspiracy charge in Count One, the sentencing court found that the Total Offense Level was 32.  (D.I. 182 at 5)  As for Count Two, the attempted murder charge, the PSR applied U.S.S.G. § 2A2.1 ("Assault with Intent to Commit Murder; Attempted Murder"), which carried a base offense level of 33.  (D.I. 184 at 11)  The sentencing court, however, rejected the PSR's recommendation and instead applied U.S.S.G. § 2J1.2 ("Obstruction of Justice"), which carried a base offense level of 14.  The sentencing court included an eight-level enhancement because Boney's offense involved "causing or threatening to cause physical injury to a person," U.S.S.G. § 2J1.1(b)(1)(B), and a two-level increase

20

because Boney had targeted a vulnerable victim, U.S.S.G. § 3A1.1(b)(1). (D.I. 182 at 5) These two increases brought the base offense level for Count Two to 24. *Id.* With respect to Count Four, the solicitation charge, the sentencing court rejected the PSR's recommendation to apply U.S.S.G. § 2A1.5(a) (which carries a base offense level of 33), and again applied U.S.S.G. § 2J1.2, with the same two increases it applied for Count Two. (D.I. 182 at 5) Thus, the base offense level for Count Four was also 24.

The sentencing court concluded that the appropriate offense level for all three counts of conviction was 32, the base offense level for Count One, because that was the highest of the three individual offense levels. This offense level, in conjunction with Boney's criminal history category of III, gave Boney an advisory guidelines range of 151 to 188 months of imprisonment. (D.I. 182 at 5-6) The Government recommended an upward variance and Boney asked for the mandatory minimum 120 months. *Id.* at 12, 27, 29. The sentencing court varied upward from the guidelines range and imposed a sentence of 220 months of imprisonment, followed by eight years of supervised release. *Id.* at 33.

Boney appealed his conviction, and the Government cross-appealed to challenge the sentencing court's guidelines calculations for Counts Two and Four. The Third Circuit held that the original recommendations in the PSR were correct, and remanded for resentencing.

During the resentencing, the sentencing court used the guidelines mandated by the Third Circuit's December 8, 2015 decision and accepted the Revised PSR's calculations. Count One ended up with an offense level of 30, and Counts Two and

Four ended up with a total offense level of 39. (D.I. 136 at 5) Once again, the sentencing court used highest offense level—at this point, 39— to determine the guidelines range, which, when combined with Boney's criminal history category of III, resulted in an updated guidelines range of 324 to 425 months of imprisonment. (D.I. 136 at 5) Defense counsel made multiple objections, which the court denied. The Government requested a sentence of 324 months and Boney requested the same 220-month sentence that had previously been imposed. *Id.* at 20, 24. After varying downward, the sentencing court sentenced Boney to 272 months of imprisonment. *Id.* at 36-37. However, because the maximum imprisonment on Count Four was 15 years, the sentence breakdown was "272 months on Counts One and Two to run concurrently, and a sentence of 180 months on Count Four, all to run concurrently." *Id.* at 37.

The Court will address Boney's sub-arguments made in support of Claim Three *in seriatim.*

### 1. *Sua sponte* elevation of sentence from 220 months to 272 months

Boney contends that defense counsel was ineffective for failing to object to the sentencing court's *sua sponte* elevation of his sentences from 220 months to 272 months on Counts One and Four, respectively. (D.I. 167 at 12) Boney appears to argue that defense counsel should have objected that the sentence for Count One was inappropriately increased because the Government only appealed the sentences for Counts Two and Four. This argument is factually baseless. On resentencing, the sentencing court increased Boney's sentence to 272 months pursuant to the Third Circuit's remand and the subsequently updated guidelines range. *See generally* (D.I.

136) While it is true that the Government did not appeal the sentence for Count One, Boney fails to recognize that, although Count One determined the final base offense level in his first sentencing because it had the highest offense level, the situation had changed for his resentencing. More specifically, Counts Two and Four determined the final base offense level because they had the higher offense level. (D.I. 129 at 13 ¶ 62) Boney also fails to acknowledge that the overall concurrent 272-month sentence only applied to Counts One and Two, not to Count Four. *Id.* at 36-37. Boney was actually sentenced to 180 months of imprisonment for Count Four, because that was the maximum penalty allowed for a violation of the solicitation statute. *Id.* at 36-37.

### 2. The 272-month sentence was well above the Guidelines Range

Next, Boney contends that the final 272-month sentence was well above the guidelines range and, more specifically, was well above the maximum 180 months proscribed by law for Count Four (solicitation). Boney is mistaken. The final guidelines range for resentencing was 324 to 405 months in prison. (D.I. 129 at 24 ¶ 107) In turn, Boney received a 180-month sentence for Count Four (solicitation).

### 3. Downward variance

Boney asserts that defense counsel did not argue for a downward variance. However, the record reveals that defense counsel argued several times for a downward variance, and even noted that "the presentence officer agrees that there is merit to the defense argument for a variance." (D.I. 136 at 36) In fact, at the resentencing hearing, the sentencing court stated "I still believe a variance of some months is appropriate" before agreeing with defense counsel and varying downward by 52 months. *Id.*

23

### 4. Amendment 782

Finally, Boney argues that defense counsel, the sentencing court, and the PSR overestimated his final guidelines range by failing to account for a two-point base offense level reduction pursuant to Amendment 782. Boney is mistaken, however. The PSR for the resentencing accurately reflected Amendment 782's updated base offense level. (D.I. 130 at 12 ¶ 42) Boney actually concedes his mistake in his Reply to the Government's Answer. (*See* D.I. 191 at 54) Therefore, the Court summarily rejects this argument.

It is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless arguments or objections. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Since the resentencing "errors" identified by Boney are factually baseless, defense counsel did not provide constitutionally ineffective assistance by failing to challenge his resentencing on the basis of these non-errors. Accordingly, the Court will deny Claim Three in its entirety as meritless.

### D. Claim Four: Improper Enhancement Under 21 U.S.C. § 851

If a defendant is convicted under 21 U.S.C. § 841(b)(1)(B), and the prosecutor filed a notice before trial or entry of a guilty plea under 21 U.S.C. § 851 of a prior conviction for a felony drug offense,[7] the statutory range of punishment increases from five to 40 years to ten years to life. *See* 21 U.S.C. § 841(b)(1)(B), A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State [] that prohibits or restricts

---

[7]After the First Step Act, the language in 841(b)(1)(A) and (B) has been modified to "serious drug felony" and "serious violent felony."

conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Boney's sentence for Count One was enhanced under § 851 due to his 2001 Delaware conviction for trafficking in marijuana in violation of 16 Del. Code § 4753A. (D.I. 129 at 1; D.I. 182 at 3; D.I. 184 at 24)  As a result of that conviction, the minimum mandatory sentence for Count One increased from 60 months to 120 months.

In his final Claim, Boney asserts two arguments for invalidating the 21 U.S.C. § 851 sentencing enhancement he received for being a recidivist drug dealer: (1) the § 851 enhancement that was premised on his Delaware conviction for trafficking in marijuana is no longer valid after the Supreme Court's decision in *Mathis v. United States*; and (2) defense counsel was ineffective for not challenging the applicability of the § 851 enhancement under *Gerbier v. Holmes*, 280 F.3d 297, 316 (3d Cir. 2002). Neither of these arguments warrants relief.

### 1. Section 851 enhancement invalidated by *Mathis v. United States*

According to Boney, after *Mathis*, the Delaware state drug trafficking conviction that triggered his § 851 enhancement "does not fit the definition of 'felony drug offense' subsequently found at § 802(44) and therefore cannot be used as a predicate felony" for purposes of § 851. (D.I. 171 at 3-4)  In *Mathis*, the Supreme Court held that a prior conviction does not qualify as the generic form of a predicate violent felony offense listed in the Armed Career Criminal Act ("ACCA") if an element of the crime of conviction is broader than an element of the generic offense.  However, *Mathis* is inapplicable to this case, because Boney did not receive an enhancement under the

ACCA, but rather, under 21 U.S.C. § 851. Therefore, the Court will deny the *Mathis* argument as meritless.

### 2. Ineffective assistance for failure to challenge § 851 enhancement under *Gerbier v. Holmes*

Boney also appears to argue that defense counsel was ineffective for not challenging the applicability of the § 851 enhancement under *Gerbier v. Holmes.* In *Gerbier*, the Third Circuit held that a state drug conviction qualifies as an aggravated felony in the immigration context if the state conviction explicitly includes an element of drug trafficking. *Gerbier,* 280 F.3d at 316. Under this approach, known as the "hypothetical federal felony approach," a state felony drug possession conviction (not involving any element of drug trafficking) that would only be punishable as a federal misdemeanor would not constitute an "aggravated felony" for the purpose of the Immigration and Nationality Act. *Id.* at 307-08. Apparently presuming that *Gerbier* applies outside of the immigration context, Boney contends that, even though his prior Delaware conviction was pursuant to a Delaware statute labeled "Trafficking in Marijuana" (16 Del. Code § 4753A), defense counsel should have challenged the application of the § 851 enhancement because trafficking is not an element of the offense. Instead, § 4753(A) punishes, *inter alia*, the sale, manufacture, and delivery of marijuana, as well as the simple possession of marijuana. (D.I. 171 at 2)

The Government argues that Boney's ineffective assistance/*Gerbier*/enhancement argument should be denied for three independent reasons: the argument is not cognizable, it is time-barred, and it is meritless because Boney failed to satisfy the prejudice prong of the *Strickland* test. The Court agrees with

26

the Government that Boney's argument is meritless because Boney cannot demonstrate prejudice under *Strickland*, and therefore the Court need not and does not address whether Boney's argument is cognizable or time-barred. The minimum mandatory sentence for Count One without the § 851 enhancement would have been 60 months, and the minimum mandatory sentence for Count One with the § 851 enhancement was 120 months. (D.I. 182 at 30) Count Two, however, was the determining count for the guidelines calculation upon resentencing, which resulted in a guidelines range of 324 to 425 months. In addition, as the Government notes, nothing in the record indicates that Boney's sentence was affected by the mandatory minimum for Count One. Thus, Boney has failed to demonstrate a reasonable probability that he would have received a lower sentence but for defense counsel's failure to challenge the § 851 enhancement for Count One.

In short, the *Mathis* argument in Claim Four fails to present an issue cognizable in this proceeding, and the ineffective assistance of counsel argument lacks merit. Therefore, the Court will deny Claim Four in its entirety.

## IV.    PENDING MOTIONS

Boney filed several motions during the pendency of this proceeding. Having reviewed all of Boney's filings and having determined that Boney is not entitled to relief under § 2255, the Court will summarily dismiss the following motions as moot: (1) Motion for Protective Order to Preserve the CCTV Footage From Oakdale FCI Vernon 1 Unit on April 13, 2016 and April 14, 2016 (D.I. 149); (2) Motion for Extension of Time to File an Amended § 2255 Motion (D.I. 164); (3) Motion to Appoint Counsel (D.I. 170); (4)

Motion for Leave to Supplement With Addendum (D.I. 176); and (5) Motion for Extension of Time to File Reply (D.I. 188). The Court will summarily deny as unnecessary or frivolous the following motions: (1) Motion to Redact Name of William Boney (D.I. 177); and (2) Motion for Leave to File Entire § 2255 Motion Under Seal (D.I. 190).

Boney also filed a Motion to Return Personal Property Pursuant to Federal Rule of Criminal Procedure 41(g), asking for the return of his cellular phone that was confiscated at the time of his arrest. (D.I. 189) Boney asserts that the "Government has not lawfully sought forfeiture of the cellular phone nor has it demonstrated any compelling reason for further retainment thereof." (D.I. 189 at 2) For the following reasons, the Court will summarily dismiss the Motion as time-barred.

The six-year catch-all limitations period of 28 U.S.C. § 2401(a) applies to Boney's Rule 41(g) Motion for Return of Property, because there are no criminal proceedings pending against Boney. *See United States v. Ioane*, 2019 WL 1332188, at *1 (E.D. Ca. Mar. 25, 2019); *Glover v. United States*, 2017 WL 3705130, at *1 (E.D. Mo. Aug. 28, 2017); *United States v. Brooks*, 448 F. App'x 187, 188 (3d Cir. 2011); *United States v. Brooks*, Crim. Act. No 95-564-1-HB, Order (E.D. Pa. June 28, 2011). When, as here, the notice of forfeiture is filed in an indictment, the statute of limitations begins to run from the date that the Government seized the property. *See United States v. Karriem*, 2008 WL 5118200, at *10 (D.N.J. Dec. 4, 2008). The seizure in this case occurred when the Government asserted jurisdiction over Boney by charging him with a violation of the relevant statute via an indictment. *See Karriem*, 2008 WL 5118200, at *10.

In this case, the Government charged Boney with violating 21 U.S.C.

§ 841(a)(1), (b)(1)(B) in Count One of the first Indictment and in Count One of the

Superseding Indictment.  (D.I. 3; D.I. 37)  The first Indictment contained a Notice of

Forfeiture and was filed on April 24, 2011, a Bill of Particulars amending the Notice of

Forfeiture in the first Indictment was filed on June 2, 2011, and a Superseding

Indictment containing a Notice of Forfeiture was filed on April 12, 2012.[9]  Boney filed the

---

[9]The Indictment returned on May 24, 2011 contained the following Notice of Forfeiture:

> Upon conviction of the offense alleged in Count One of this
> Indictment, William Boney, defendant herein, shall forfeit to
> the United States pursuant to 21 U.S.C. § 853, any property,
> constituting or derived from, proceeds obtained, directly or
> indirectly, as a result of the said violations and any property
> used, or intended to be used, in any manner or part, to
> commit, or to facilitate the commission of the said violation.

(D.I. 3 at 2)  On June 2, 2011, the Government filed a Bill of Particulars for Forfeiture of
Property amending the original Notice of Forfeiture as follows:

> Upon conviction of any of the offenses alleged in Count One
> of this Indictment, defendant shall forfeit to the United States
> pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461(c), any
> property, real or personal, that constitutes or is derived from
> or is traceable to proceeds obtained directly or indirectly from
> the commission of that offense, and all property, real or
> personal that was used to facilitate, or was intended to be
> used to facilitate the commission of that offense. []

(D.I. 4 at 1-2)  The First Superseding Indictment returned on April 12,  2012 contained
the following Notice of Forfeiture:

> Upon conviction of the controlled substance offense alleged
> in Count One of this First Superseding Indictment, Boney shall
> forfeit to the United States pursuant to 21 U.S.C. § 853, any
> property used, or intended to be used, in any manner or part,
> to commit, or to facilitate the commission of the said violation.

(D.I. 37 at 2)

29

instant Rule 41(g) Motion for Return of Property on May 11, 2018. (D.I. 189) Applying the six-year limitations period to any of the aforementioned filing dates for the Indictments and Bill of Particulars demonstrates that Boney filed the instant Rule 41(g) Motion anywhere from one month[10] to one year[11] after the expiration of the limitations period. Accordingly, the Court will deny as time-barred the Rule 41(g) Motion for Return of Property.

## V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Boney is not entitled to relief. Therefore, the Court will deny Boney's § 2255 Motion without an evidentiary hearing.

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of

---

[10]Six years from the April 12, 2012 filing date of the First Superseding Indictment.

[11]Six years from the May 24, 2011 filing date of the first Indictment.

the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court concludes that Boney's Claims lack merit, and it is further persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For the foregoing reasons, the Court will dismiss Boney's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. Additionally, the Court will not issue a certificate of appealability. The Court will issue an appropriate Order.